ployer a responsible purchaser, willing to purchase upon the terms prescribed, has earned his commissions and is entitled to recover.

Judgment affirmed, with costs.

GARRETSON and KAPPER, JJ., concur.

---

STATE BANK OF BROCTON v. CAMPBELL et al.

(Supreme Court, Appellate Division, Fourth Department.  July 9, 1912.)

1. ESTOPPEL (§ 83*)—REPRESENTATIONS—SOLVENCY.

Where a corporation executed a mortgage for practically all its property to a bank, and the mortgage was not recorded, and the president of the bank led third persons, who became creditors of the corporation, to believe that the corporation was solvent and concealed the existence of the mortgage, the bank was estopped from asserting the validity of the mortgage as against the third persons; the president being bound to disclose the unrecorded mortgage and the insolvency of the corporation.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 218, 227–229; Dec. Dig. § 83.*]

2. BANKS AND BANKING (§ 111*)—OFFICERS—ACTS BINDING ON BANK.

The statements of the president of a bank, which holds an unrecorded mortgage executed by a corporation, as to the solvency of the corporation, made to third persons subsequently becoming creditors of the corporation on the faith of such statements, are binding on the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 269, 270; Dec. Dig. § 111.*]

Appeal from Trial Term, Chautauqua County.

Action by the State Bank of Brocton against John L. Campbell, as trustee in bankruptcy of the Brocton Fruit Juice Company, bankrupt, and others.  From a judgment dismissing the complaint on the merits, plaintiff appeals.  Affirmed.

The action was commenced in the Supreme Court, Chautauqua county, on the 15th day of November, 1910, to foreclose a mortgage given by the Brocton Fruit Juice Company to the plaintiff, bearing date the 18th day of September, 1905, for $15,000, to secure any and all indebtedness then existing or thereafter to be created by said company to the plaintiff, which mortgage was not recorded until the 4th day of November, 1909.  In the meantime the Fruit Juice Company had become largely indebted to other parties and had become insolvent.  So that on February 23, 1910, a petition in involuntary bankruptcy was filed against it, and on the 7th day of March, 1910, said company was duly adjudged bankrupt, and the respondent was duly appointed trustee, and as such defends this action.

The answer alleged as a defense, among others, in substance, that for a period of upwards of four years subsequently to the making and delivering of the mortgage in question, and in pursuance of a fraudulent scheme and arrangement with the defendant, Brocton Fruit Juice Company, its officers and agents, said plaintiff did withhold said mortgage from record, and did fraudulently neglect and omit to record the same in the place provided by statute for the recording thereof, and did fraudulently conceal the fact from all parties dealing with the Brocton Fruit Juice Company that such mortgage or lien had been placed upon its property, to the end that the said defendant, Brocton Fruit Juice Company, might, from persons in ignorance of the making and delivering of such mortgage, obtain credit and financial accommoda-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tions, upon the faith and in the belief that said defendant was the owner of said lands and premises described in the complaint and that same were un-incumbered and free from liens; that because of such negligent and fraudulent omission of the plaintiff to record the mortgage and the concealment of its existence, and after investigation made, and relying upon the apparent ownership of the said lands and premises by said defendant, Brocton Fruit Juice Company, unincumbered, and in ignorance of said mortgage or of said mortgage indebtedness, various of the creditors of said Brocton Fruit Juice Company were induced to and did extend to said company certain credits and accept the obligations of said defendant therefor, which credits and obligations still remain unpaid; that said defendant, Brocton Fruit Juice Company, is, and for a long time has been, and was at and prior to the recording of said mortgage, hopelessly insolvent, and at all such times owned assets far less in value and amount to the liabilities owed by it, of all of which facts the plaintiff, through its president, had knowledge at all of the times in question. The defendant therefore claims that the mortgage in question was and is fraudulent and void and that it creates an unlawful preference in favor of the plaintiff.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Arthur B. Ottoway, of Westfield, for appellant.
L. L. Thrasher, of Fredonia, for respondents.

McLENNAN, P. J.   The plaintiff is a banking corporation, and the Brocton Fruit Juice Company is a business corporation, both located in the village of Brocton, N. Y.   About the year 1900, the plaintiff began loaning money to the Brocton Company, and continued to do so from time to time and down to about the time this action was commenced, taking the notes of the latter company for such loans. On the 18th day of September, 1905, the mortgage in question was executed and delivered in the sum of $15,000 to secure any and all indebtedness then existing or thereafter to be created by the Brocton Company to the plaintiff, which expressed consideration of $15,000 was at least double the actual value of the property and assets of the Brocton Fruit Juice Company.   The property covered by the mortgage included the premises owned by the Brocton Company, together with the boiler, engine machinery, tanks, storage casks, tools, stock and supplies, and office furniture; in fact, practically all of the property owned by the Brocton Company.   It appears that, at the time of the trial of this action, the Brocton Company was indebted to the plaintiff in the sum of $12,991.70, being over $5,000 more than the value of the entire property and assets of the Brocton Fruit Juice Company. It further appears that, at the time of the making of the loans and the giving of the security, one Ralph A. Hall was the president of the plaintiff, and as such had his office at the bank, and was also the treasurer of and a large stockholder in the defendant Brocton Fruit Juice Company.   The mortgage was not recorded until November 4, 1909, some four years after its delivery.

[1] The evidence tends to show that for about three years after the delivery of this mortgage to the plaintiff it was either kept in the files of the bank, of which Hall was president, or in the desk of Hall in the bank, and that for more than a year immediately prior to the recording of the mortgage it was kept in the files of the bank.   During

this time various creditors and persons dealing with the Brocton Fruit Juice Company called upon Mr. Hall at the bank and inquired as to the financial standing of the Brocton Fruit Juice Company, and the evidence shows that at no time did he indicate to them that there was any difficulty or embarrassment; but, on the contrary, he led such persons to believe that the company was a going, solvent, and successful corporation, and never informed them that his bank had a mortgage on practically all of the property which the company owned, and which, if a valid obligation and security, he knew rendered the Brocton Company insolvent, as a result of which assurances of solvency, and in reliance upon the records in the county clerk's office that the Brocton Company had an unincumbered title to the premises in question, credit was extended to the Brocton Company by such creditors. Therefore we have the question as to whether or not the omission and neglect of Hall, the president of the plaintiff and the treasurer of the Brocton Company, to inform the creditors of the existence of the unrecorded mortgage for $15,000, and his concealment of its existence, did not give to the Brocton Company a false and fictitious standing and financial credit, which omission, concealment, and neglect amounted to a fraud upon the creditors of the Brocton Company which is imputable to the plaintiff in this action. In this connection it should be stated that Hall severed his relations as an officer in the Brocton Company in September, 1908, over a year before the mortgage in question was recorded, and that after he severed his relations with the Brocton Company the plaintiff continued to loan money to such company, and Hall continued to assure inquiring creditors as to the solvency of the Brocton Company.

The referee has found that such failure, neglect, and concealment on the part of Hall, the president of plaintiff, did amount to a fraud upon the creditors which is imputable to the plaintiff, and that the mortgage which it is sought to foreclose is void, and, as it seems to me, such finding is abundantly supported by the evidence. Hall, the president of the plaintiff, and treasurer of the Brocton Company, was in possession of all of the facts. He knew, or ought to have known, the financial condition of the Brocton Company, and, when inquiring creditors called upon him, it was his duty, as an officer of the Brocton Company, to inform them as to the exact situation, and especially it was his duty to inform them that the bank, of which he was president, had an unrecorded mortgage, the express consideration of which was more than double the value of all the assets of the Brocton Company. At his solicitation the mortgage in question was executed and delivered, and, instead of placing the same on record, he kept it either upon his desk or in the files of the bank of which he was president. The creditors were not informed at any time as to the existence of this mortgage, and, so far as appeared from the records of mortgages, the Brocton Company was the owner of valuable real property situate in the village of Brocton, as well as considerable personal property. The mortgage was kept by Hall for nearly four years and was not put on record until the summons was served upon the Brocton Company in an action commenced by a creditor to obtain payment of

a just claim, and on the same day that this summons was served the mortgage in question was recorded.  During all of the time that this mortgage was in the possession of Hall or the plaintiff, inquiring creditors of the Brocton Company were led to believe and understand that the Brocton Company was a going, solvent, and successful corporation, and that they would be entirely justified in extending credit to such corporation, when in fact Mr. Hall, the president of the plaintiff, knew that such company was insolvent and that his bank held an unrecorded mortgage on all of its property in an amount double the actual value of such property.  The plaintiff is now seeking to foreclose such unrecorded mortgage to the end that it may wipe out the entire assets of the Brocton Company in favor of the plaintiff and against the other creditors who were so misled, and the evidence justifies the conclusion that such creditors would not have extended credit to such company if the plaintiff's president had stated to them the exact facts when called upon to do so.

The judgment in this case is supported by authority.  In Bank v. Miller, 163 N. Y. 167, 57 N. E. 309, the court said:

"Fraud is one of the broadest issues known to the law, for it can seldom be proven by direct evidence, but is dependent upon circumstances which, separately considered, may be quite immaterial, but when combined are not only material, but have great persuasive force."

In the case of Means v. Dowd, 128 U. S. 287, 9 Sup. Ct. 70, 32 L. Ed. 429, the court said:

"In the present case, it was kept from record from the time of its date, the 24th of April, until the 11th day of July, thereafter.  This was undoubtedly the act of the grantees in the deed, the parties whose obligations for the bankrupts were secured by it, and who were the trustees appointed by it for its execution.  The period that it was thus kept secret was as long as it could be, with safety to the purpose of hindering and delaying creditors; for as soon as it was known that Calvin Chestnut was about to procure judgment, which either, by virtue of the judgment itself, or by levy of an execution upon the goods, would become a lien, the paper was recorded, for the undoubted purpose of preventing this result."

In the case of Thompson v. Simpson, 128 N. Y. 270, 28 N. E. 627, Judge Andrews, speaking for the court, said:

"An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped.  The cases of Storrs v. Barker, 6 Johns. Ch. 166 [10 Am. Dec. 316], and Continental National Bank v. National Bank of Commonwealth, 50 N. Y. 576, were cases where there was not intent to mislead, but where what was said was intended to influence the action of the other party and did influence it, and a duty rested upon the party giving the information or making the statement, if he spoke at all, to have ascertained the actual facts so as not to have misled the other party to his prejudice.  An estoppel may arise also from silence as well as words.  But this is only where there is duty to speak, and the party upon whom the duty rests has an opportunity to speak, and, knowing the circumstances requiring him to speak, keeps silent.  Viele v. Judson, 82 N. Y. 32; Hamlin v. Sears, 82 N. Y. 327; N. Y. Rubber Co. v. Rothery, 107 N. Y. 310 [14 N. E. 269, 1 Am. St. Rep. 822]."

In the case at bar the evidence conclusively shows that various creditors called upon Mr. Hall for information concerning the financial condition of the Brocton Fruit Juice Company, of which he was

treasurer and a large stockholder, and he led them to believe that it would be safe to extend credit and sell goods to such company, knowing at the time that his bank had a mortgage on practically all of the property which the Brocton Company owned, which, if enforceable, would render such company absolutely insolvent, and in this action to foreclose the mortgage which was given and which was not recorded, it seems to me that the bank, Hall's principal, is estopped from asserting the validity of such mortgage for the reason that it was Hall's duty to speak on the subject of the unrecorded mortgage and the insolvency of the Brocton Company, and not mislead the creditors of such company to their damage.

[2] The appellant urges that the court erred in receiving the testimony of Hall on the ground that such testimony was not binding upon the plaintiff. In my opinion the evidence was clearly competent, and it is sufficient to say that Hall, at the time he made the statements which are in evidence, was an officer, to wit, president, of the plaintiff.

It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.